1
2
3
4
5
6
7
8                         UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   AUTOTEK INC. and CHRISTOPHER              No.  2:16-cv-01093-KJM-CKD
     LULL,
12
                     Plaintiffs,
13                                             ORDER
            v.
14
     COUNTY OF SACRAMENTO, et al.,
15
                     Defendants.
16

17

18          Plaintiffs sue Sacramento County and various municipal departments for

19   excessively enforcing local building and zoning codes.  Before the court are two motions to

20   dismiss.  Defendant Sacramento Municipal Utility District ("SMUD") Mot., ECF No. 7;

21   Defendant Sacramento County ("County") Mot., ECF No. 16.  Plaintiffs oppose both motions.

22   Opp'n to SMUD, ECF No. 15; Opp'n to County, ECF No. 21.  The court heard both motions on

23   November 4, 2016.  Susan A. Denardo appeared for defendant SMUD, Wendy Motooka appeared

24   for defendant County, and Cris C. Vaughan appeared for plaintiffs.  Mins, ECF No. 23.  The court

25   GRANTS both motions with leave to amend, as discussed below.

26
27
28
                                           1

1    I.        BACKGROUND

2              For purposes of this motion, the court assumes the following allegations are true.

3    *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

4         A.   The Parties

5              Plaintiffs are a smog check corporation named Autotek and the individual

6    corporation's founder, Christopher Lull ("Lull").  First Am. Compl. ("FAC"), ECF No. 58, ¶¶ 1–

7    2.  Autotek operates its smog check business on 8633 Antelope North Road in Antelope,

8    California ("the subject property").  *Id.* ¶ 2.  Lull, initially a tenant on the subject property,

9    purchased it in a September 2010 settlement agreement with his landlord.  *Id.* ¶¶ 2, 32.  Plaintiffs

10   now sue Sacramento County, eight County departments or divisions, and fifteen current and

11   former County employees for excessively enforcing the building code on the subject property.  *Id.*

12   at 3–7.[1]  Plaintiffs also sue SMUD for shutting off their electrical services at the County's

13   instruction.  *Id.* ¶ 76.

14        B.   Allegations Regarding Dispute

15             The tumultuous relationship between plaintiffs and the County spans years.  *Id.* ¶¶

16   60–81.  The dispute prompting this case began in 2010 when the County frequently inspected the

17   subject property, notified plaintiffs of repeated building code violations, issued administrative

18   fines for unpermitted construction, and recorded notices of pending enforcement actions[2] against

19   the property.  *Id.* ¶¶ 35, 36, 38–42, 44.

20

21

22        [1] The named County departments are: the Planning Department, Building Code
     Department, County Counsel, Community Development Department, Board of Supervisors, Clerk
23   of the Board of Supervisors, Sheriff's Department, and the Department of Revenue Recovery.
     FAC ¶¶ 3–4.  The named individual former and current County employees are: Lori Moss,
24   Leighann Moffitt, Brian Washko, Robin Rasmussen, Bob Ivie, John Muzinich, Scott Purvis, Russ
     Williams, Wayne Eastman, June Powells-Mays, Tammy Derby, Paul Munoz, Cyndi Lee,
25   Florence Evans and Jared Wickliff.  *Id.* ¶ 4.

26        [2] A "Notice of Pending Enforcement Action" is the County's declaration that property
27   owners have been notified that their property is a recorded "nuisance."  *See* Sacramento County
     Code § 16.20.410(a).

28

1   Plaintiffs invested over $80,000 in property improvements to try to comply with

2   County ordinances and zoning requirements and requested permits to correct their code

3   violations, but the County denied each request, fined them for unpermitted work and threatened to

4   discontinue their electricity.  *Id.* ¶¶ 40, 41, 45, 56, 62–63, 81–89, 235–45.

5   The parties' ongoing dispute peaked on December 24, 2014, when SMUD

6   disconnected the electricity to the subject property, issued a "notice of continuing violation,"[3]

7   declared one of plaintiffs' buildings "dangerous," summarily suspended plaintiffs' smog shop

8   permit and ordered plaintiffs to vacate the building.  *Id.* ¶¶ 66–71, 74, 76, 79.  The County

9   disconnected plaintiffs' power after issuing successive "stop work orders"[4] and administrative

10   penalties throughout December.  *Id.* ¶¶ 66–71, 74.  This swift punitive action was a response to

11   plaintiffs' unpermitted emergency building repairs after severe wind and rain damage, which the

12   County declared a health and safety hazard.  *Id.* ¶¶ 66, 70.

13   C.   Related Litigation

14   Plaintiffs also have several pending state court lawsuits against the County and

15   SMUD based on the same dispute.  *See* Status Reports, ECF Nos. 28, 29 (affirming no changes to

16   these pending cases as of July 14, 2017).  Specifically, Lull and Autotek both have challenged the

17   County's administrative actions through the administrative appeals process in Sacramento County

18   Superior Court and petitions for writ review.  *See* County Request for Judicial Notice ("RJN")

19   Nos. 1–12, ECF No. 16-2.  The court judicially notices the following related cases under Federal

20   Rule of Evidence 201(b):

21   1.   *Autotek & Lull v. Cnty. of Sacramento, et al.*, Case No. 34-2015-00177665, filed April 9,

22   2015, noticing an appeal of County administrative penalties.  RJN No. 2: Notice of

23

24   [3] The County posts a "Notice of Continuing Violation" on a property to notify the occupants of certain building code, land use or zoning violations that have been "ongoing" for more than 24 hours.  Sacramento County Code § 1.25.010 (defining ongoing violations).  The notice details the history of the allegedly ongoing violation and warns the occupants of administrative penalties that may result if the violation goes unaddressed.

27   [4] "Stop Work Orders" are County directives that order occupants whose ongoing construction violates local ordinances to cease building immediately or face penalties. Sacramento County Code § 15.04.180.

28

1   Appeal, ECF No. 19.

2       2.   *Autotek & Lull v. Cnty. of Sacramento (Building Dep't)*, Case No. 34-2015-00182775,

3           filed August 10, 2015, noticing an appeal of County administrative penalties.  RJN No. 4.

4       3.   *Lull v. Cnty. of Sacramento*, Case No. 34-2015-80002172, filed August 26, 2015, a writ of

5           mandate seeking judicial review of the County's permit procedures regarding emergency

6           repairs Lull performed after a building collapse.  RJN No. 6: Verified Petition for Writ of

7           Administrative Mandate ¶¶ 17–18.

8       4.   *Autotek, Inc. v. Cnty. of Sacramento*, Case No. 34-2015-80002233, filed November 6,

9           2015, a writ of mandate challenging jurisdiction as well as the fairness and results of the

10          administrative proceedings provided to Autotek.  RJN No. 8.

11  FAC ¶¶ 90, 94, 116–17.

12          D.   Procedural History

13             Plaintiffs allege the County's enforcement of building codes and land use

14  regulations amount to both state and federal civil rights violations.  Plaintiffs bring the following

15  eleven claims against all named defendants, without differentiation:

16      1.   Violation of Civil Rights, 42 U.S.C. § 1983,[5] Procedural Due Process;

17      2.   Violation of Civil Rights, 42 U.S.C. § 1983, Substantive Due Process;

18      3.   Violation of Civil Rights, 42 U.S.C. § 1983, Unreasonable Seizure;

19      4.   Violation of Civil Rights, 42 U.S.C. § 1983, Denial of Equal Protection;

20      5.   Violation of Civil Rights, 42 U.S.C. § 1983, Retaliation for Exercise of Free Speech and

21          Right to Petition;

22      6.   Violation of Legitimate Police Powers;

23      7.   Violation of Civil Rights, 42 U.S.C. § 1983, Excessive Fines;

24      8.   Unreasonable Seizure in violation of California Constitution, Article I, Section 13;

25  _____

26        [5] Section 1983 is entitled "Civil action for deprivation of rights" and provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other

27  person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983.

28

1    9.  Denial of Due Process in violation of California Constitution, Article I, Section 7;

2    10. Intentional Infliction of Emotional Distress; and

3    11. Negligent Infliction of Emotional Distress.

4    *See generally* FAC.

5           The County and SMUD move separately to dismiss plaintiffs' complaint.  SMUD

6    Mot.; County Mot.  Plaintiffs oppose each motion.  Opp'n to SMUD; Opp'n to County.  SMUD

7    and the County have replied.  SMUD Reply, ECF No. 18; County Reply, ECF No. 22.

8    II.    PROPER DEFENDANTS

9           Plaintiffs bring eleven claims against "all named defendants."  *See generally* FAC.

10   Both dismissal motions contend plaintiffs have named improper defendants.  SMUD Mot. at 3–5;

11   County Mot. at 5–6.

12       A.  County Defendants

13          The County correctly argues the municipal and individual county defendants are

14   duplicative of the County.  At hearing, plaintiffs' counsel agreed dismissing the municipal

15   departments is appropriate as to all claims.  Accordingly, the court GRANTS the County's

16   motion as to the eight municipal departments named in plaintiffs' complaint.[6]

17          As to the fifteen named current and former county employees, the County argues

18   to the extent they are named in their official capacities the court should also dismiss them as

19   duplicative of the County.  In a section 1983 action, when a plaintiff names a government official

20   in his individual capacity, the plaintiff is seeking "to impose personal liability upon [that] official

21   for actions he takes under color of state law."  *Kentucky v. Graham*, 473 U.S. 159, 165 (1985).

22

23          [6] The Sacramento County Charter states the County is the real party at interest in a suit
     based on County conduct.  *See* Sacramento County Charter, Art. I § 3 ("The corporate name shall
24   be County of Sacramento, and by that name it must be designated in all actions and proceedings
     affecting its corporate rights, properties, powers and duties").  Municipal departments are not
25   "persons" within the meaning of section 1983, and therefore cannot properly be the targets of
     plaintiffs' section 1983 federal civil rights claims.  *United States v. Kama*, 394 F.3d 1236, 1239–
26   40 (9th Cir. 2005) ("[M]unicipal police departments and bureaus are generally not considered
     'persons' within the meaning of [s]ection 1983.").
27

28

                                                5

1   When a plaintiff in a section 1983 action names a government official in his official capacity, the

2   plaintiff sues the government body itself. *Id.* at 159.  In the latter situation, the government entity

3   is the real party in interest and the plaintiff must show the entity's policy or custom played a part

4   in the federal law violation. *Gomez v. Vernon*, 255 F.3d 1118, 1126 (9th Cir. 2001) ("A suit . . .

5   against a governmental officer in his official capacity is equivalent to a suit against the

6   governmental entity itself") (citation omitted).  When a plaintiff sues a county, courts in this

7   circuit tend to dismiss additional official-capacity claims against individual county employees as

8   duplicative. *See Vance v. City of Santa Clara*, 928 F. Supp. 993, 996 (N.D. Cal. 1996) ("The

9   Court follows other District Courts in holding that if individuals are being sued in their official

10   capacity as municipal officials and the municipal entity itself is also being sued, then the claims

11   against the individuals are duplicative and should be dismissed") (citation omitted).

12          Here, because the complaint names the County, adding County employees in their

13   official capacity does not afford plaintiffs any additional claims or remedies.  Accordingly, the

14   court DISMISSES as duplicative the individually-named official-capacity County defendants.

15   But the complaint sues these employees in their personal capacities and references actions they

16   took personally with respect to the subject property.  FAC ¶ 26.  The County offers no rationale

17   for dismissing these individual-capacity defendants.  The court therefore does not reach that issue.

18          B.  SMUD as a Proper Defendant

19          SMUD first argues plaintiffs cannot state a claim for relief against SMUD under

20   any legal theory because SMUD's rules and regulations authorize it to discontinue plaintiffs'

21   electricity if the County so requests, which the County did after plaintiffs violated County code

22   provisions.  SMUD Mot. at 4–5 (citing FAC ¶¶ 35, 40–44, 60, 70–71).  Plaintiffs concede SMUD

23   had legal authority to discontinue their power, but contend SMUD violated its own rules in the

24   process: SMUD neither gave a seven-day written notice nor first determined plaintiffs had illegal

25   and unsafe wiring or equipment on their property.  Opp'n to SMUD at 3–4.

26          Plaintiffs have pled sufficient facts that, if true, show SMUD bypassed its own

27   procedural safeguards to summarily fulfill the County's request to discontinue plaintiffs' power.

28   *Iqbal*, 556 U.S. at 678 (to withstand dismissal, the complaint need only "'state a claim to relief

1    that is plausible on its face.'") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

2    This summary discontinuation of power, without following prescribed procedures, could

3    plausibly support due process, retaliation or unreasonable seizure claims against SMUD.  The

4    court evaluates the claims independently below, but as a preliminary matter, the court rejects

5    SMUD's argument that it is an improperly named defendant.

6         SMUD also argues that only the County is a proper defendant as to plaintiffs'

7    seventh, eighth and ninth claims (Eighth Amendment excessive fines, Fourth Amendment

8    unreasonable seizure, and Fourteenth Amendment due process).  *See* FAC ¶¶ 235–51.  The

9    operative complaint attributes each alleged wrong in these three claims to the County and does

10   not reference actions SMUD took.  *Id.*  At hearing, plaintiffs' counsel conceded the excessive

11   fines claim (claim seven) applies only to the County.  The court GRANTS SMUD's motion to

12   dismiss claim seven, with prejudice.  Plaintiffs have not responded to SMUD's arguments on

13   claims eight and nine (unreasonable seizure and due process).  The court therefore DISMISSES

14   claims eight and nine, without prejudice.

15   III.    ABSTENTION

16        The County asks the court to abstain from hearing plaintiffs' first (procedural due

17   process), second (substantive due process), third (unreasonable seizure of electrical service),

18   fourth (equal protection), fifth (retaliation), and seventh (excessive fines) claims.  *Id.*  The County

19   argues plaintiffs' pending state court proceedings overlap with and may ultimately moot the

20   federal constitutional issues raised by these claims.  County Mot. at 8.

21        Abstention is a common law doctrine that permits federal courts to refrain from

22   exercising federal jurisdiction where there are compelling reasons to allow state courts to decide

23   related state law issues first.  *See Colo. River Water Conservation Dist. v. United States*, 424 U.S.

24   800, 814 (1976).  Abstention does not abdicate federal jurisdiction; it postpones exercising

25   jurisdiction to spare federal courts unnecessary constitutional adjudication.  *See City of Chi. v.*

26   *Fieldcrest Dairies, Inc*., 316 U.S. 168, 172–73 (1942).  Abstention applies only in limited and

27   well-delineated circumstances of state and federal court overlap and does not support dismissal

28   "merely because a State court could entertain [the suit]."  *Ala. Pub. Serv. Comm'n. v. S. R. Co*.,

341 U.S. 341, 361 (1951) (Frankfurter, J., concurring); *Colo. River*, 424 U.S. at 814 (explaining abstention is the exception, not the rule).  Before assessing abstention's applicability here, the court assesses the overlap with the parallel state court proceedings.

    A.  <u>State Court Proceedings</u>

        Plaintiffs simultaneously challenge the County's building code enforcement penalties and administrative procedures in both state and federal court.  Here, plaintiffs contend the County's building and zoning code enforcement implicates multiple federal constitutional provisions including the Fourteenth Amendment's due process and equal protections, First Amendment prohibition on retaliation, Fourth Amendment search and seizure limitations, and the Eighth Amendment's prohibition on excessive fines.  FAC ¶¶ 131–222, 235–45.  Plaintiffs seek damages stemming from past enforcement actions, an injunction against future enforcement, and declaratory relief that would require interpreting County ordinances.  *Id.* at 56–57 (requesting court declare County lacks authority to "impos[e] fees for unsolicited service," "withhold public utility connection from Plaintiffs" or "to publicly record 'Notice of Pending Enforcement Actions'").

        Plaintiffs' four pending state actions also challenge the County's state law authority to enforce the building code as it has and the fairness of the County's proceedings.  County Mot. at 8.  Each state proceeding overlaps significantly with this federal case in substance and in relief.  Two pending state appeals challenge the building code violation penalties the County imposed on plaintiffs.  *See* RJN Nos. 2, 4 (citing *Autotek & Lull v. Cnty. of Sacramento*, Case No. 34-2015-00177665, and *Autotek & Lull v. Cnty. of Sacramento (Building Dep't)*, Case No. 34-2015-00182775).  A writ of mandate[7] proceeding effecting challenges to the County's permitting process regarding Lull's emergency repairs on a collapsed building.  RJN No. 6 ¶¶ 17–18 (citing *Lull v. Cnty.*, Case No. 34-2015-80002172).  Another challenges the fairness, and

---

    [7] A Petition for Writ of Administrative Mandamus is a request that a state trial court review (for abuse of discretion) and reverse an agency's final decision or order.  *See* Cal. Civ. P. Code § 1094.5.

1   results of, as well as the jurisdiction for County proceedings against Autotek.  RJN No. 8 (citing

2   *Autotek, Inc. v. Cnty. of Sacramento*, Case No. 34-2015-80002233).

3           In sum, plaintiffs simultaneously challenge the County's building code

4   enforcement penalties and administrative procedures in state and federal court.  The overlap is

5   such that the state court outcomes could alter the federal issues here.  As discussed below,

6   *Pullman* abstention may apply.

7       B.  *Pullman* Abstention

8           *Pullman* abstention, deriving from *R.R. Comm'n v. Pullman Co.*, 312 U.S. 496

9   (1941), permits federal courts to abstain in "cases presenting a federal constitutional issue which

10  might be mooted or presented in a different posture by a state court determination of pertinent

11  state law."  *Allegheny Cnty. v. Frank Mashuda Co.*, 360 U.S. 185, 189 (1959) (citation omitted).

12  The rationale is that federal courts should wait to adjudicate a case that could turn on pertinent

13  and unclear state law questions.  *Fieldcrest Dairies*, 316 U.S. at 172; *Spector Motor Serv., Inc. v.

14  McLaughlin*, 323 U.S. 101, 105 (1944) ("[F]ederal courts do not decide questions of

15  constitutionality on the basis of preliminary guesses regarding local law.") (citation omitted).

16          The Ninth Circuit sanctions *Pullman* abstention only when (1) a complaint

17  "touches a sensitive area of social policy upon which the federal courts ought not to enter unless

18  no alternative to its adjudication is open," (2) "such constitutional adjudication plainly can be

19  avoided if a definitive ruling on the state issue would terminate the controversy," and (3) "the

20  possibly determinative issue of state law is doubtful."  *Canton v. Spokane Sch. Dist. No. 81*,

21  498 F.2d 840, 845 (9th Cir. 1974), *overruled on other grounds as recognized by Heath v.

22  Cleary*, 708 F.2d 1376, 1378 n.2 (9th Cir. 1983).  The parties here only summarily briefed

23  abstention and did not address the Ninth Circuit's teaching.  *See* County Mot. at 7–8; Opp'n to

24  County at 8–9; County Reply at 2.

25      C.  Analysis

26          1.  Sensitive Area of Social Policy

27          The court may abstain under *Pullman* only if the complaint "touches a sensitive

28  area of social policy upon which the federal courts ought not to enter unless no alternative to its

adjudication is open." *Canton*, 498 F.2d at 845.  The Ninth Circuit repeatedly has declared land use planning is a sensitive social policy area that meets the first *Canton* requirement.  *See, e.g.*, *C-Y Dev. Co. v. City of Redlands*, 703 F.2d 375, 377 (9th Cir. 1983); *Sinclair Oil Corp. v. City of Santa Barbara*, 96 F.3d 401, 409 (9th Cir. 1996); *Kollsman v. City of L.A.*, 737 F.2d 830, 833 (9th Cir. 1984), *cert. denied*, 469 U.S. 1211 (1985); *Sederquist v. City of Tiburon*, 590 F.2d 278, 281 (9th Cir. 1978).  Land use planning includes local building and zoning code regulations.  *See C-Y*, 703 F.2d at 378 (characterizing building permit applications as an area of local land use planning); *Pearl Inv. Co. v. City and Cnty. of S.F.*, 774 F.2d 1460, 1463 (9th Cir. 1985) (same).

Plaintiffs' federal constitutional claims in this case each attack the County's land use regulations.  Specifically, plaintiffs base their due process, excessive penalties, disparate treatment and retaliation claims on the County's building code permitting and penalty process. Each County action, even if improper, was taken to enforce the County's land use regulations. Thus, plaintiffs' claims are based on local land use regulations, a "sensitive area of social policy." *C-Y*, 703 F.2d at 377.  This satisfies the first *Canton* requirement.

## 2.   State Decision May Moot Federal Issues

Second, for a court to abstain under *Pullman* the overlapping state proceedings must have the potential to moot or alter the federal constitutional questions a plaintiff raises. *Canton*, 498 F.2d at 845.  The state court proceedings need not fully moot the federal issues; changing or narrowing the issues is enough.  *Sinclair*, 96 F.3d at 409 (9th Cir. 1996) ("[I]t is sufficient if the state law issues might 'narrow' the federal constitutional questions."); *Pearl*, 774 F.2d at 1464 (same); *C-Y*, 703 F.2d at 379 (same); *see also Ohio Bureau of Employ. Serv. v. Hodory*, 431 U.S. 471, 481 (1977) (using language of "eliminate or at least to alter materially") (citation omitted); *Bellotti v. Baird*, 428 U.S. 132, 146–47 (1976) ("avoid in whole or in part" or "materially change") (citation and quotation marks omitted); *Colo. River*, 424 U.S. at 814 ("mooted or presented in a different posture") (citation and quotation marks omitted); *Pue v. Sillas*, 632 F.2d 74, 79 (9th Cir. 1980) ("render unnecessary or substantially modify").

Here, the state cases could moot, limit or alter plaintiffs' federal questions.  If plaintiffs succeed on their writs of mandate the state judiciary may invalidate the County's permit

1    denials and penalty enforcement procedures.  *Selby Realty Co. v. City of San Buenaventura*, 109

2    Cal. Rptr. 799, 807 (1973); *Palmer v. Fox*, 118 Cal. App. 2d 453, 456 (1953).  Invalidating the

3    County's permit denials or penalties would vindicate the procedural due process rights plaintiffs

4    claim to have been denied, and reverse the excessive punishments they claim to have suffered.

5    Abstaining could thus avert a premature and unnecessary federal constitutional ruling on these

6    alleged wrongs.  *C-Y*, 703 F.2d at 380.  At a minimum, the pending state adjudications could

7    narrow these constitutional inquiries.  *Sinclair*, 96 F.3d at 409.  These circumstances meet the

8    second *Canton* factor.

9                    3.  Third *Canton* Requirement: State Law is "Doubtful"

10                   Third, abstaining under *Pullman* requires that the concurrent and potentially

11   determinative issues of state law are sufficiently unclear or "doubtful."  *Canton*, 498 F.2d at 845.

12   An issue of state law is doubtful if "a federal court cannot predict with any confidence how the

13   state's highest court would decide an issue of state law."  *Pearl*, 774 F.2d at 1465 (citation

14   omitted).  "Resolution of an issue of state law might be uncertain because the particular [state]

15   statute is ambiguous, or because the precedents conflict, or because the question is novel and of

16   sufficient importance that it ought to be addressed first by a state court."  *Id.*; *L.A. All. for*

17   *Survival v. City of L.A.*, 987 F. Supp. 819, 824 (C.D. Cal. 1997).  This third factor exists to avoid

18   "a federal court's erroneous determination of a state law issue [that] may result in premature or

19   unnecessary constitutional adjudication, and unwarranted interference with state programs and

20   statutes."  *Pue*, 632 F.2d at 79.

21                   Here, resolution of the relevant state law questions is doubtful.  Each concurrent

22   state law proceeding calls for assessing whether the County appropriately enforced certain land

23   use regulations.  Local government's enactment and enforcement of land use regulations is a

24   "doubtful" area of California law because it "turn[s] on the peculiar facts of each case in light of

25   the many [applicable] local and state-wide land use laws . . . ."  *Sederquist*, 590 F.2d at 282;

26   *Santa Fe Land Improvement Co. v. City of Chula Vista*, 596 F.2d 838, 841 (9th Cir. 1979);

27   *Sinclair*, 96 F.3d at 410; *but see Pearl*, 774 F.2d at 1465 (criticizing liberal application of

28   *Pullman*'s third requirement in land use cases, but conceding it is controlling precedent).

1    Through plaintiffs' writ of mandamus proceedings state courts will review the County's

2    administrative enforcement actions for abuse of discretion; the Ninth Circuit has specifically

3    referenced this "abuse of discretion" inquiry as a "doubtful" area of California law. *Sederquist*,

4    590 F.2d at 282–83 ("We do not claim the ability to predict whether a state court would decide

5    that the [local government] here abused its discretion.").

6            In sum, sufficient doubt surrounds the state law questions raised by plaintiffs'

7    concurrent state proceedings to meet the third and final *Canton* requirement.  The court may thus

8    abstain from deciding certain federal constitutional issues pending resolution of the state

9    proceedings.  That said, plaintiffs' claims here are section 1983 civil rights claims; therefore, they

10   warrant one further analytical step.

11            4.   Equitable Considerations

12            Federal courts are hesitant to abstain in section 1983 civil rights cases. *Canton*,

13   498 F.2d at 846 ("cases involving vital questions of civil rights are the least likely candidates for

14   abstention.").  As the court in *Canton* poignantly observed, "[i]ndeed, the objectives of the Civil

15   Rights Act would be defeated if we decided that this federal claim grounded on an alleged

16   violation of the federal constitution would have to stagnate in the federal court until some

17   nebulous or nonexistent remedy was pursued like a will-o'-the-wisp in the state court." *Id.*

18   (quoting *Wright v. McMann*, 397 F.2d 519, 525 (2d Cir. 1967)).  But "there is no per se civil

19   rights exception" to abstention; courts examine each case separately.  *C-Y*, 703 F.2d at 381.

20            Here, the only civil rights claim on which *Pullman* abstention appears inequitable

21   is plaintiffs' First Amendment retaliation claim (fifth claim).  *Chula Vista Citizens for Jobs &*

22   *Fair Competition v. Norris*, 782 F.3d 520, 528 (9th Cir. 2015) ("[abstention] is strongly

23   disfavored in First Amendment cases.");  *Porter v. Jones*, 319 F.3d 483, 486–87 (9th Cir. 2003)

24   ("It is rarely appropriate for a federal court to abstain under *Pullman* in a First Amendment case

25   . . . . because there is a risk [] the delay that results from abstention will itself chill the exercise of

26   the rights that the plaintiffs seek to protect by suit").  No similar rationale has been articulated to

27   resist abstention in section 1983 claims based on land use issues.  *See C-Y*, 703 F.2d at 381; *see*

28

1    *also Kollsman*, 737 F.2d at 836 n.18 ("[A]bstention often will be appropriate when state land use

2    regulations are challenged on state and federal grounds."); *Sinclair*, 96 F.3d at 409–10.

3              Considering all relevant factors, the court finds abstention is appropriate on

4    plaintiffs' first (procedural due process), second (substantive due process), third (unreasonable

5    seizure of electrical service), fourth (equal protection) and seventh (excessive fines) causes of

6    action.  But abstention is not appropriate as to plaintiffs' fifth claim (retaliation under the First

7    Amendment).  While the court declines to abstain from hearing plaintiffs' retaliation claim, the

8    claim nonetheless is subject to Rule 12(b)(6) dismissal, as detailed below.

9    IV.     FAILURE TO STATE A CLAIM

10             A.  Legal Standard for Dismissal Under Rule 12(b)(6)

11             Defendants both argue plaintiffs fail to state any cognizable claim.  Under Rule

12   12(b)(6), a court may dismiss a claim "based on the lack of a cognizable legal theory or the

13   absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police*

14   *Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  Although a complaint need only contain "a short and

15   plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2),

16   to survive a motion to dismiss this short and plain statement "must contain sufficient factual

17   matter . . . to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting

18   *Twombly*, 550 U.S. at 570).  A complaint must include something more than "an unadorned, the-

19   defendant-unlawfully-harmed-me accusation" or "'labels and conclusions' or 'a formulaic

20   recitation of the elements of a cause of action[.]" *Id.* (citations omitted).

21             Ultimately, a Rule 12(b)(6) inquiry focuses on the interplay between the

22   complaint's allegations and relevant dispositive legal issues. *See Hishon v. King & Spalding*, 467

23   U.S. 69, 73 (1984).  This context-specific evaluation requires the court to construe the complaint

24   in the plaintiff's favor and accept all factual allegations as true. *Iqbal*, 556 U.S. at 678; *Erickson*

25   *v. Pardus*, 551 U.S. 89, 93–94 (2007).  But the court need not accept the truth of "'a legal

26   conclusion couched as a factual allegation,'" *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or

27   "allegations that contradict matters properly subject to judicial notice" or to material attached to

28   or incorporated by reference into the complaint. *Sprewell v. Golden State Warriors*, 266 F.3d

13

1    979, 988–89 (9th Cir. 2001).  Because the court abstains on five of plaintiffs' claims, this

2    dismissal analysis focuses on only the remaining six claims.

3              B.  First Amendment Retaliation (Claim Five)

4              Plaintiffs allege defendants "unlawfully used County police power for enforcement

5    . . . to intentionally injure and retaliate against [p]laintiffs for exercising their right to petition and

6    right to access administrative proceedings" and that "[d]efendants' actions were vindictive and

7    maliciously motivated to deter [p]laintiffs from exercising their rights defined in the First

8    Amendment."  FAC ¶ 218.

9              A successful retaliation claim requires proof that plaintiffs engaged in protected

10   activity, and defendants responded to such activity in a way that would chill a person of ordinary

11   firmness from further protected activities.  *Corales v. Bennett*, 567 F.3d 554, 563 (9th Cir. 2009)

12   (citation omitted).  To survive dismissal, plaintiffs must allege retaliation is not just a "possible"

13   explanation for defendants' actions, but a "plausible" one.  *In re Century Aluminum Co. Sec.*

14   *Litig.*, 729 F.3d 1104, 1105 (9th Cir. 2013).  To show plausibility, plaintiffs must do more than

15   allege facts that are "merely consistent with both their explanation and defendants' competing

16   explanation."  *Id.* (citing *Iqbal*, 556 U.S. at 678).  After all, actions defendants would have taken

17   anyway are not constitutional torts.  *Hartman v. Moore*, 547 U.S. 250, 260–61 (2006).

18             Here, the complaint does not allege facts sufficient to show defendants'

19   discontinuance of plaintiffs' electricity was plausibly retaliatory.  Plaintiffs baldly claim

20   defendants' aggressive building code enforcement was designed to "restrain [p]laintiffs from

21   obtaining [administrative] relief."  FAC ¶ 219.  But as pled, defendants' enforcement conduct

22   began when plaintiffs started violating the building code, long before plaintiffs' quest for

23   administrative relief.  Thus, the allegations show defendants shut off plaintiffs' power in response

24   to repeated building code violations and hazards on plaintiffs' property; not to chill plaintiffs'

25   protected activity.  Plaintiffs cannot bolster their contrary legal conclusion by describing

26   defendants' enforcement conduct as "vindictive," "malicious," "unsanctioned," or "oppressive."

27   FAC ¶¶ 218–19.  Devoid of the requisite allegations and details, the court will not presume the

28   truth of these emotionally charged adjectives.  *See Papasan*, 478 U.S. at 286 (court need not

1    accept the truth of "'a legal conclusion couched as a factual allegation'") (citation omitted).  The

2    court DISMISSES plaintiffs' retaliation claim, without prejudice.

3             C.  Violation of Legitimate Police Powers (Claim Six)

4                 Plaintiffs allege the County exceeded its police powers "by unlawfully and ultra

5    vires enacting and enforcing" various county Code provisions to the damage and injury of

6    plaintiffs.  FAC ¶ 225.  Plaintiffs contend these local ordinances are "preempted by state law"

7    "conflict[] with state law" "contradict[] state law" and "violate[] substantive or procedural due

8    process as well as the California Administrative Act."  *Id.*  Defendants appear confused as to the

9    legal basis for this claim, and rightfully so as plaintiffs do not identify a clear foundation for the

10   claim.  As pled, there is no apparent basis for litigating this claim in federal court.  To the extent

11   plaintiffs allege County officials abused their discretion in enforcing County local land use

12   ordinances, the proper avenue appears to be through the state's writ of mandamus procedure.

13   Having heard no arguments to the contrary at hearing, the court finds amendment would be futile,

14   and dismisses this cause of action, with prejudice.

15            D.  State Constitutional Claims (Claims Eight and Nine)

16                Plaintiffs' eighth and ninth claims allege violations of the California Constitution

17   Article I sections 7 and 13.  FAC ¶¶ 246–51.  As discussed above, the court dismissed both

18   claims, without prejudice, against SMUD.  As to the County, the court dismisses both claims

19   without prejudice, as discussed below.

20                Through plaintiffs' state law unlawful seizure claims they seek "punitive or

21   exemplary damages, according to proof, in addition to compensatory and special damages."  FAC

22   ¶ 248.  Yet California Constitution Article I section 13, upon which this claim rests, does not

23   confer a private right of action for damages.  *See Cabral v. Cnty. of Glenn*, 624 F. Supp. 2d 1184,

24   1196 (E.D. Cal. 2009) ("this Court has previously determined . . . [section] 13 confers no private

25   cause of action for damages") (citation omitted); *Lopez v. Youngblood*, 609 F. Supp. 2d 1125,

26   1142 (E.D. Cal. 2009) ("Plaintiffs may not bring damages claims directly under Article I, Section

27   13").  Because plaintiffs seek only damages on this claim it necessarily fails.  The court

28   DISMISSES plaintiffs' eighth claim, without prejudice.

1    Plaintiffs' state law due process and equal protection claims derive from the

2    California Constitution Article I section 7.  Again, plaintiffs seek only monetary damages, FAC

3    ¶ 251, yet section 7 does not confer a private right of action for damages.  *Cabral*, 624 F. Supp.

4    2d at 1196; *Lopez*, 609 F. Supp. 2d at 1142; *Katzberg*, 29 Cal. 4th at 329.  The court DISMISSES

5    plaintiffs' ninth claim, without prejudice.

6         E.  State Tort Claims (Claims Ten and Eleven)

7         Defendants contend plaintiffs' tenth and eleventh state law claims for intentional

8    infliction of emotional distress and negligent infliction of emotional distress fail as a matter of

9    law because they do not comply with California's Tort Claims Act.  County Mot. at 14–15;

10   SMUD Mot. at 7–8.  Before a claimant may assert a state law claim for money damages against a

11   public entity he must first present the claim to that public entity.  Cal. Gov. Code § 905.  Such a

12   claim must include a general description of the indebtedness, obligation, injury, damage or loss to

13   the extent that it may be known at the time the claim is presented.  *Id.* § 910(d).  "Timely

14   compliance with the claim filing requirements and rejection of the claim by the governmental

15   agency must be pleaded in a complaint in order to state a cause of action."  *Dujardin v. Ventura*

16   *Cnty. Gen. Hosp.*, 69 Cal. App. 3d 350, 355 (1977) (citations omitted); *see United States v. State*

17   *of Cal.*, 655 F.2d 914, 918 (9th Cir. 1980) ("[California's claim filing] requirements are

18   substantive elements of the cause of action, not mere jurisdictional limitations.").  Thus,

19   plaintiffs' complaint must allege facts to show either compliance with or excusal from the above-

20   mentioned requirements under the California's Tort Claims Act.  *State v. Superior Court*, 32 Cal.

21   4th 1234, 1239 (2004) ("failure to allege facts demonstrating or excusing compliance with the

22   claim presentation requirement subjects a claim against a public entity to a demurrer for failure to

23   state a cause of action.").

24        Here, the complaint vaguely alleges plaintiffs filed claims with the County and

25   SMUD regarding their emotional distress based on the disconnection of their electricity.  FAC

26   ¶ 130.  Plaintiffs do not allege any facts tending to show their tort claims were timely, nor do they

27   explain when or whether SMUD or the County rejected their claims.  *See id.*  In opposition,

28   plaintiffs effectively concede their complaint does not comply with California's Tort Claims Act,

1   though they characterize the date omission as a "typographical error."  Opp'n to SMUD at 10.  In

2   reply, defendants contend the issues go beyond typographical errors, and explain why plaintiffs'

3   tort claim was ultimately untimely.  SMUD Reply at 4; County Mot. at 14.  Defendants argue

4   California Government Code section 911.2(a) imposes a six-month statute of limitations for

5   personal injury or personal property claims, then highlight the nearly one year lapse between the

6   plaintiffs' December 24, 2014 "loss date" and plaintiffs' December 10, 2015 claim submission.

7   SMUD Reply at 3–4; County Reply at 7.  Defendants also contend plaintiffs knew about this

8   timing deficiency.  SMUD Reply at 3–4; County Reply at 7.  At hearing, defendants asked the

9   court to judicially notice relevant dates, but the court sustained plaintiffs' objection to the request

10  as untimely.

11          The operative complaint neither alleges enough to show plaintiffs' Tort Claims

12  Act compliance, nor pleads plaintiffs out of a claim by admitting such compliance is lacking.

13  Plaintiffs' state law tort claims will be dismissed.  But the court declines to dismiss with

14  prejudice, as defendants request.  Accordingly, the court DISMISSES plaintiffs' tenth and

15  eleventh claims, without prejudice.

16  V.      LEAVE TO AMEND

17          Plaintiffs have requested leave to amend their complaint.  Rule 15 of the Federal

18  Rules of Civil Procedure mandates that leave to amend "be freely given when justice so requires."

19  Fed. R. Civ. P. 15(a).  "This policy is to be applied with extreme liberality."  *Eminence Capital,*

20  *LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (citation and quotation marks omitted).

21  In a Rule 15 analysis, a court considers any potential bad faith, delay, or futility regarding the

22  proposed amendment, and the potential prejudice to the opposing party.  *Foman v. Davis*, 371

23  U.S. 178, 182 (1962); *see also Smith v. Pac. Prop. Dev. Co.*, 358 F.3d 1097, 1101 (9th Cir. 2004).

24  "The party opposing amendment bears the burden of showing prejudice."  *DCD Programs, Ltd. v.*

25  *Leighton*, 833 F.2d 183, 187 (9th Cir. 1987).  Absent prejudice, Rule 15(a) carries a strong

26  presumption in favor of granting leave to amend.  *Eminence Capital*, 316 F.3d at 1052.

27          Here, there is a possibility plaintiffs could cure their pleading deficiencies as to

28  their fifth, eighth, ninth, tenth and eleventh claims, as discussed above.  Defendants have not

1    shown any undue prejudice that allowing amendment may cause.  Accordingly, the court

2    GRANTS plaintiffs' request to amend the complaint as to these five claims.

3          In granting leave to amend, the court reminds plaintiffs that Federal Rule of Civil

4    Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim

5    showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "Each allegation must be

6    simple, concise, and direct."  Fed. R. Civ. P. 8(d)(1).  The court may dismiss a complaint on Rule

7    8 grounds alone if it is "verbose, confusing and conclusory."  *See Nevijel v. N. Coast Life Ins.*

8    *Co.*, 651 F.2d 671, 674 (9th Cir. 1981) (district court did not abuse its discretion in dismissing

9    amended complaint with prejudice that was "equally as verbose, confusing and conclusory as the

10   initial complaint.").

11         Plaintiffs' first amended complaint is 58 pages long, riddled with vague and

12   conclusory allegations that do not distinguish between multiple duplicative defendants.  The court

13   admonishes plaintiffs that any subsequent amended complaint must comply with Rule 8; each

14   allegation must be simple, concise and direct.

15   VI.    <u>CONCLUSION</u>

16         This court GRANTS both motions to dismiss, and decides the following:

17     1.  DISMISSES all claims against the County Planning Department, Building Code

18         Department, County Counsel, Community Development Department, Board of

19         Supervisors, Clerk of the Board of Supervisors, Sheriff's Department, Department of

20         Revenue Recovery, and all claims against the individual County employees in their

21         official capacity, as duplicative to the County defendant;

22     2.  ABSTAINS from hearing plaintiffs' first, second, third and fourth claims until plaintiffs'

23         related state court cases resolve;

24     3.  DISMISSES plaintiffs' fifth, eighth, ninth, tenth and eleventh claims, without prejudice;

25     4.  DISMISSES plaintiffs' sixth claim, with prejudice; and

26     5.  GRANTS plaintiffs' request to amend the complaint within fourteen days of this order.

27

28

1          IT IS SO ORDERED.

2              This order resolves ECF Nos. 7 and 15.

3    DATED:  July 24, 2017.

4

5

6    _____
     UNITED STATES DISTRICT JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28