UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AUTOTEK INC. and CHRISTOPHER LULL, <br><br> Plaintiffs, <br><br> v. <br><br> COUNTY OF SACRAMENTO, et. al., <br><br> Defendants. | No. 2:16-cv-01093-KJM-CKD <br><br> ORDER |

Plaintiffs sue the County of Sacramento, the Sacramento Municipal Utility Department ("SMUD") and several individual County employees for excessively enforcing local building and zoning codes. Before the court are the motions to dismiss plaintiffs' second amended complaint brought by the County defendants and SMUD. ECF Nos. 44, 47. The court submitted both motions on November 29, 2017. H'rg Mins., ECF No. 54. As explained below, the court GRANTS IN PART and DENIES IN PART both motions.

I.     BACKGROUND

Plaintiffs are a smog check corporation, Autotek, and Autotek's founder, Christopher Lull. Second Am. Compl. ("SAC"), ECF No. 35, ¶¶ 1-2. Autotek operates its smog check business from a property Lull now owns in Antelope, California. *Id.* ¶ 2.

/////

Plaintiffs have had a tumultuous relationship with the County since 2010; the instant dispute derives from the County's enforcement actions taken against Lull's property. Plaintiffs contend the County's enforcement was excessive and taken in retaliation for plaintiffs' ongoing criticism and complaints about the County. *See generally id.* The County's allegedly retaliatory conduct includes summarily imposing large, successive monetary and administrative penalties against plaintiffs for zoning and permitting violations, *id.* ¶¶ 63, 68-69; summarily rejecting plaintiffs' building plans, *id.* ¶ 78; threatening to disconnect plaintiffs' power, *id.* ¶¶ 64, 70-72; instructing SMUD to disconnect plaintiffs' power, which SMUD did summarily and without adequate procedures, *id.* ¶¶ 38-39, 105-06; denying plaintiffs' request for electricity reconnection, *id.* ¶¶ 79, 82, 83; recording a "Notice of Pending Enforcement Action," which clouded plaintiffs' title to the property, *id.* ¶ 90; making false allegations to state agencies that prompted the agencies to investigate, raid and search plaintiffs' smog check business, *id.* ¶¶ 68, 93; and trying to revoke plaintiffs' smog check business license, *id.* ¶¶ 64, 72.

Plaintiffs sue SMUD, the County and several current and former County employees ("County defendants") for civil rights violations; they sue only the County defendants for negligent and intentional infliction of emotional distress ("NIED" and "IIED") as well. *See id.* ¶¶ 5-21.[1] As required by the California Tort Claims Act, plaintiffs filed tort claims with the County on December 15, 2015, *id.* ¶ 102, which were rejected as untimely a week later. County Request for Judicial Notice ("County RJN") Nos. 5-6, ECF No. 44-2.[2] In May 2016, plaintiffs filed this lawsuit making eleven claims. ECF No. 1. The court previously has granted a motion

---

[1] The individually named County defendants are Lori Moss, Leighann Moffitt, Brian Washko, Robin Rasmussen, Bob Ivie, John Muzinich, Scott Purvis, Russ Williams, Wayne Eastman, June Powells-Mays, Tammy Derby, Paul Munoz, Cyndi Lee, Florence Evans, and Jared Wickliff ("the County defendants").

[2] The court may judicially notice the filing date and the content of plaintiffs' tort claim and its rejection by the County. These documents are matters of public record that set forth facts capable of accurate and ready determination from sources whose authenticity cannot reasonably be questioned. *Moore v. City of Vallejo*, 73 F. Supp. 3d 1253, 1256 (E.D. Cal. 2014) (doing the same); *Clarke v. Upton*, 703 F. Supp. 2d 1037, 1042 (E.D. Cal. 2010) (same). Plaintiffs have not opposed this request for judicial notice.

2

to dismiss with limited leave to amend. Order July 25, 2017 ("Prior Order"), ECF No. 31 (dismissing First Am. Compl., ECF No. 5). Plaintiffs filed their operative, second amended complaint in September 2017. Plaintiffs added new claims and defendants, which they have since dismissed. *See* Dismissal Stipulations, ECF Nos. 40, 41, 43. Six claims remain: Illegal search and seizure, due process and equal protection claims against SMUD; and First Amendment retaliation, IIED and NIED claims against the County. SMUD and the County defendants separately move to dismiss all claims. County Mot., ECF No. 44; County Mem., ECF No. 44-1; SMUD Mot., ECF No. 47; SMUD Mem., ECF No. 47-2. Plaintiffs oppose both motions. Pls.' SMUD Opp'n, ECF No. 48; Pls.' County Opp'n, ECF No. 49.

II.     LEGAL STANDARD

Defendants both argue plaintiffs fail to state any cognizable claim. Under Rule 12(b)(6), a court may dismiss a claim "based on the lack of cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). Although a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), to survive a motion to dismiss this short and plain statement "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint must include something more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Id*. Determining whether a complaint will survive a motion to dismiss is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. The inquiry focuses on the interplay between the complaint's allegations and dispositive legal issues. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

The court must construe the complaint in the plaintiffs' favor and accept all factual allegations as true. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). The court need not accept as true "'a legal conclusion couched as a factual allegation,'" *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or "allegations that contradict matters properly subject to judicial notice" or to material

3

attached to or incorporated by reference into the complaint, *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988-89 (9th Cir.), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001).

III. ANALYSIS

A. SMUD

Plaintiffs' three federal constitutional claims against SMUD are based on 42 U.S.C. § 1983, which provides a cause of action for those whose federal rights have been violated by someone acting under color of law. *Gomez v. Toledo*, 446 U.S. 635, 639 (1980). Plaintiffs allege SMUD's decision to disconnect their power deprived plaintiffs of their due process rights, equal protection under the law and their freedom from unreasonable seizures. SAC ¶¶ 103-20.

1. Due Process

Plaintiffs contend SMUD arbitrarily deprived them of their vested property right in continued electrical service without adequate notice or an opportunity to be heard, in violation of the Fourteenth Amendment's federal due process guarantees. SAC ¶¶ 103-14. Specifically, plaintiffs contend their electricity disconnection was done too quickly and without adherence to SMUD's internal rules and procedures.

SMUD first argues the court should abstain from hearing this claim, as the court abstained in its prior order from hearing the procedural due process claim against the County. Prior Order at 13-18. The court declines to abstain here. Abstention in the prior order was based on several pending state cases involving the County and the precise enforcement mechanisms the County used against plaintiffs. *Id.* at 9-13 (listing state cases). Although resolution of those state cases could alter the constitutional claims as framed against the County in the first amended complaint, no pending state cases pertain to SMUD. The court will assess the merits of this claim against SMUD.

To allege a plausible procedural due process claim, plaintiffs must allege facts showing the government deprived them of a vested liberty or property interest without adequate procedural protection. *Brewster v. Bd. of Ed. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998). Discontinuing electrical service could deprive plaintiffs of a vested right if

4

plaintiffs had a "legitimate claim" to continued electricity. *Memphis Light, Gas and Water Div. v. Craft*, 436 U.S. 1, 11-12 (1978); *Bd. of Regents of State Coll. v. Roth*, 408 U.S. 564, 577 (1972). The extent, scope and conditions of a right to continuing electricity are created and defined by state and local rules, and those same rules therefore delineate when one has a claim of entitlement to continued service. *Memphis Light*, 436 U.S. at 11-12 (local law required "for cause" before terminating electrical service); *Parks v. Watson*, 716 F.2d 646, 656 (9th Cir. 1983) (citations omitted).

Here, plaintiffs have shown a plausible claim of entitlement to a property right in utility service. Although plaintiffs concede they violated local building and permitting standards and requirements, SAC ¶¶ 42, 45, 48, 50, 57, 58, 63, 66, 67, and therefore may have properly been subject to electrical service disconnection, plaintiffs allege SMUD disconnected their power too quickly, without following SMUD's own seven-day notice policy. *Id.* ¶¶ 105-08 (citing SMUD Rule 11). Plaintiffs allege the six exceptions to the seven-day notice rule do not apply here. *Id.* ¶¶ 77, 107-08. Specifically they allege the "dangerous condition" exception does not apply because there was nothing dangerous on the property. *Id.* ¶ 36. Assuming these allegations to be true, as required, plaintiffs have shown a legitimate interest in continued electrical service and a plausible due process violation, namely disconnection without seven days' notice. SMUD contends the claim should nonetheless be dismissed. SMUD Reply, ECF No. 52, at 4. Citing its Rule 11(c), SMUD explains it is authorized to disconnect utility service without seven days' notice if "in SMUD's judgment, operation of customer's equipment constitutes a dangerous condition." *Id.* SMUD argues because plaintiffs allege only that no dangerous condition existed, rather than that SMUD never "judged" there to be such a condition, the claim cannot succeed. *Id.* Although plaintiffs have not specifically alleged SMUD made no such "judgment," plaintiffs allege that "arbitrary and baseless 'Dangerous Building' stickers" were placed on their windows to "create the illusion of dangerous circumstances," SAC ¶ 75, and they allege "[t]he Building has never been a dangerous building and there have been no unsafe or illegal apparatus as defined in applicable state law," *id.* ¶ 36. It is plausible to conclude based on these allegations that SMUD either did not make the judgment or made a baseless judgment. *See Myers v. City of Alcoa*, 752

5

F.2d 196, 200 (6th Cir. 1985) (district court clearly erred in its "summary" dismissal of plaintiff's § 1983 due process claim based on electrical disconnection where ultimate disconnection likely was warranted, but allegations showed potential denial of pre-deprivation safeguards such as proper notice).

Because plaintiffs allege entitlement to continued electricity for at least seven more days past the time their service was disconnected, and a breach of that entitlement, this claim withstands dismissal.

2. Equal Protection

SMUD argues plaintiffs also have not pled sufficient facts to support their equal protection claim. SMUD Mot. at 3. Here, the court agrees.

The equal protection clause of the Fourteenth Amendment guarantees, "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV § 1. The clause aims "'to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents.'" *Sioux City Bridge Co. v. Dakota Cty*, 260 U.S. 441, 445 (1923) (quoting *Sunday Lake Iron Co. v. Township of Wakefield*, 247 U.S. 350, 352 (1918)). In the most common type of case, an equal protection claimant must prove he or she was discriminated against based upon membership in a "protected class." *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001) (citation omitted).

Plaintiffs concede they have not identified a protected class to which they belong. Pls.' SMUD Opp'n at 4. As such, the only theory upon which this claim could survive is a class-of-one disparate treatment theory. *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601 (2008) (citing *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam)). This theory requires plaintiffs to show they each, individually were "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Olech*, 528 U.S. at 564 (citations omitted).

Plaintiffs here have not so shown. They allege "Defendants *[sic]* disconnection of electricity was arbitrary and Defendants would not have physically disconnected the electrical

service or condemned the property of similarly situated persons." SAC ¶ 74. Yet plaintiffs do not allege who these similarly situated persons are or how they were treated differently. Plaintiffs later contradict their statement by alleging SMUD has treated plaintiffs the same as it would any other person the County targets for utility disconnection: "[SMUD] terminated [plaintiffs'] electrical service solely at the request of the County, consistent with S.M.U.D.'s longstanding custom, practice and policy to terminate [electrical] service solely at the request of a public entity." SAC ¶ 110. By alleging SMUD merely rubber-stamps electrical-disconnection requests, plaintiffs foreclose the possibility that SMUD intentionally discriminated against them each as class-of-one claimants. Plaintiffs have thus pled themselves out of a discrimination claim. *Sprewell*, 266 F.3d at 988 ("We have held that a plaintiff can—as Sprewell has done here—plead himself out of a claim by including unnecessary details contrary to his claims.") (citations omitted); *see also Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295-96 (9th Cir. 1998) ("[W]e are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint.").

Plaintiffs request yet another chance to amend this claim. Pls.' SMUD Opp'n at 4. Leave to amend should be "freely given when justice so requires," Fed. R. Civ. P. 15(a); a policy courts apply "with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (citation and quotation marks omitted). Absent the opponent's showing of undue prejudice, *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987), there is a strong presumption in favor of granting leave to amend, *Eminence Capital*, 316 F.3d at 1052.

Doubtful that the deficiencies raised by their motion to dismiss can be cured, SMUD opposes plaintiffs' request but does not identify any undue prejudice. Reply at 2, 5 ("[N]othing among Plaintiffs' list of conclusory allegations amounts to or can be amended to amount to a claim[.]"). Considering discovery remains open for approximately four more months, and noting both the absence of any undue prejudice and the strong presumption in favor of permitting leave to amend, the court GRANTS plaintiffs' request. *Cf. In re Google, Inc. Privacy Policy Litig.*, No. 5:12-CV-001382-PSG, 2015 WL 4317479, at *1 (N.D. Cal. July 15,

2015) (denying leave to amend only after three rounds of dismissal motions and after discovery had closed). This claim is DISMISSED with leave to amend.

### 3. Search and Seizure

SMUD also argues plaintiffs have not pled sufficient facts to support their Fourth Amendment unlawful seizure claim based on the warrantless entry onto plaintiffs' property to disconnect their utility service. SMUD Mot. at 5. The Fourth Amendment protects people from unreasonable searches and seizures of "their persons, houses, papers, and effects." Const. Amend. IV. When a property interest is seized in accordance with the proper exercise of local police powers, the seizure is presumed reasonable under the Fourth Amendment. *Heien v. North Carolina*, 135 S. Ct. 530, 546 (2014) (explaining in fourth amendment seizure cases, if government official seizes property in accordance with law then in existence, that law "carrie[s] with it a presumption of validity."); *see, e.g.*, *Wyss v. City of Hoquiam*, 111 F. App'x 449, 451 (9th Cir. 2004) (City's severance of homeowner's electricity and order to vacate "was a reasonable exercise of the City's police power based on the unsafe condition of the building" and therefore not an unreasonable seizure) (citing *Conner v. City of Santa Ana*, 897 F.2d 1487, 1493 (9th Cir. 1990)); *Price v. City of Junction, Tex.*, 711 F.2d 582, 588 (5th Cir. 1983) (seizures effected in accordance with local ordinances are reasonable under the Fourth Amendment; local ordinances presumed valid unless proven otherwise).

Here, plaintiffs allege "unknown S.M.U.D. Employees . . . [c]ollectively and individually trespassed on the Property, exercised dominion and control over Plaintiffs and their property without a warrant or consent and physically terminated the electrical service[.] SAC ¶ 38. Plaintiffs concede the County had previously cited and fined them for multiple building and zoning code violations. *See id.* ¶¶ 63, 72, 75-76 (before utility disconnection, County employees imposed fines and penalties for unpermitted building repairs, threatened to disconnect utility services based on contract violations, posted "Dangerous Building" stickers and "Notice of Continuing Violations" stickers on Plaintiffs' business windows, and suspended plaintiff's Smog Shop Permit). Plaintiffs also concede the County ordered SMUD to disconnect plaintiffs' utilities in response to these violations. *See id.* ¶ 110 ("[SMUD] terminated [plaintiffs'] electrical service

8

solely at the request of the County[.]"). The applicable Building Code expressly authorizes disconnection of utility service "to any system, device, appliance, or equipment found to be in violation of this code" or "when the owner [fails to] fully comply with the conditions of the required permits," or "work [on the property] is found to be hazardous[.]" *See* Ex. C to SMUD RJN, ECF No. 47-3 (Cal. Building Code, § 112.3(1)-(2), "authority to disconnect service utilities")[3] SMUD thus terminated plaintiff's electrical service at the County's direction in accordance with the applicable, and presumptively valid, local ordinance. That SMUD allegedly violated its own seven-day notice rule in disconnecting plaintiff's electricity is relevant only to plaintiffs' procedural due process claim, not their unreasonable seizure claim. Stated otherwise, plaintiffs' due process claim concerns the speed with which SMUD disconnected the utility service, whereas plaintiffs' unlawful seizure claim concerns whether it was reasonable for SMUD to seize the electricity at all.

Plaintiffs' opposition does nothing to salvage this claim: Plaintiffs state only that the operative complaint "is neither vague nor ambiguous as to the allegations regarding the conduct of SMUD which Plaintiffs claim is in violation of their due process right and their right to be free from unreasonable seizure." Pls.' SMUD Opp'n at 4. The court has previously granted plaintiffs leave to amend this claim. Because SMUD seized plaintiffs' utility service in accordance with a presumptively valid ordinance, this claim is conclusively barred and further amendment would therefore be futile. This claim is DISMISSED without leave to amend.

/////
/////
/////

---

[3] The court GRANTS SMUD's request to judicially notice the existence of this Code section, as it is publicly available and its authenticity cannot reasonably be questioned. The court overrules plaintiffs' objection based on a purported mistitling of the code section. *See* RJN Opp'n, ECF No. 48-1 ("SMUD has not supplied the Court with a copy of California Building Code . . . The document submitted is a copy of a Sacramento County code[.]"). The Sacramento County Code adopts and incorporates by reference the California Building Code. *See* Tit. 16, Sac. County Code, Ch. 16.02.040 "Adoption of the California Building Code" (2013).

B. County Defendants

Plaintiffs assert three claims against the County and individual county employees: IIED, NIED and First Amendment retaliation. As explained below, only the retaliation claim survives.

1. Emotional Distress Claims

The County defendants all move to dismiss plaintiffs' intentional and negligent infliction of emotional distress claims, arguing in part that plaintiffs did not comply with the California Tort Claims Act. County Mot. at 20-22.

A prerequisite to asserting any state law claim against a public entity is that the complainant must first present the public entity with "all claims for money or damages" against the entity. Cal. Gov't Code § 905. Because compliance with California's claim filing statute is an element of a claim, a plaintiffs' complaint must allege facts showing either compliance with or excusal from the requirements. *States v. State of California*, 655 F.2d 914, 918 (9th Cir. 1980) (citations omitted); *Perez v. Golden Empire Transit Dist.*, 209 Cal. App. 4th 1228, 1236-37 (2012).

Here, plaintiffs do not allege sufficient facts to show compliance with the Tort Claims Act requirements, or that they were exempted from complying. The statute of limitations for claims concerning personal injury or damage to personal property is six months, meaning tort claims based on such injury or damage must be filed within that time. Cal. Gov't Code § 911. The documents the court has judicially noticed, *see supra* footnote 1, show plaintiffs presented their tort claims based on the disconnection of electrical service to the County outside this six-month claims filing period. Specifically, plaintiffs presented their tort claims on December 15, 2015, complaining only of emotional distress caused by the December 24, 2014 service disconnection. SAC ¶¶ 38, 102; County RJN No. 5. The six-month period for filing any tort claims arising from the disconnection on December 24, 2014 closed on June 24, 2015. Plaintiffs identify no applicable exception to this rule. Thus, plaintiffs' Tort Claims Act claim was untimely. The County told plaintiffs as much in its response to the claim dated December 23, 2015. County RJN No. 6 (notice of untimely claims).

To the extent plaintiffs' emotional distress claims are based on something other than the disconnection of electricity, plaintiffs have not alleged compliance with the claims statute whatsoever. The Tort Claims Act requires that each theory of recovery in a judicial complaint be reflected in a timely claim and that the factual circumstances identified in the tort claim correspond to facts alleged in the complaint. *Munoz v. State of California*, 33 Cal. App. 4th 1767, 1776 (1995). Here, the factual circumstances alleged in support of plaintiffs' tort claims pertain only to electrical service disconnection and the posting of signs. *See* Pls.' Tort Claim, ECF No. 44-2 at 99-100 (stating only "Disconnection [of utility service] was improper & without authority.) No allegations supporting plaintiffs' tort claim pertain to the Lien Removal Contract, administrative penalties, permit denials, recorded liens, denied appeals, raids or investigations by local or state agencies, or disorganized document productions. *See generally* SAC (incorporating each alleged act as a basis for each claim). Plaintiffs' IIED and NIED claims therefore cannot rest on the allegations pled only in the complaint. In opposition, plaintiffs do not address the flaws in these claims.

The Tort Claims Act bars plaintiffs' state tort claims as a matter of law. The court GRANTS the County defendants' motion to dismiss these state claims, without leave to amend. *Homsy v. Bank of Am., N.A.*, No. C 13-01608 LB, 2013 WL 2422781, at *5 (N.D. Cal. June 3, 2013) ("where a plaintiff simply fails to address a particular claim in its opposition to a motion to dismiss that claim, courts generally dismiss it with prejudice"); *see also Jenkins v. Cty of Riverside*, 398 F.3d 1093, 1095 n. 4 (9th Cir.2005) (finding plaintiff abandoned two claims by not raising them in opposition to summary judgment motion).

       2. <u>First Amendment Retaliation Claim</u>

The County defendants all move to dismiss plaintiffs' First Amendment retaliation claim. To succeed on such a retaliation claim, plaintiffs must allege facts showing (1) they were engaged in protected activity, (2) defendants' actions injured plaintiffs in a way that would chill a person of ordinary firmness from further protected activities, and (3) defendants' actions were a response to plaintiffs' exercise of constitutionally protected conduct. *Corales v. Bennett*, 567 F.3d 554, 563 (9th Cir. 2009) (citation omitted). As with any claim, the allegations must show

retaliation is not just a "possible" explanation for defendants' actions, but is a "plausible" one. *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1105 (9th Cir. 2013). "To render their explanation plausible, plaintiffs must do more than allege facts that are merely consistent with both their explanation and defendants' competing explanation." *Id.* (citing *Iqbal*, 556 U.S. at 678). After all, "action that would have been taken anyway" does not amount to a constitutional tort. *Hartman v. Moore*, 547 U.S. 250, 260 (2006) (citation omitted).

### a) <u>Individual County Employees</u>

Here, plaintiffs allege sufficient facts to withstand dismissal of their retaliation claim against all but two individual County defendants. Plaintiffs allege they consistently engaged in protected activity by "seeking redress of their grievances with the County and County employees" by "criticizing [] policies, practices and procedures Plaintiffs believe were unlawful and beyond the authority of the County and its employees to enforce." SAC ¶ 144. Plaintiffs also specify which County officials played a role in denying plaintiff's permits, imposing administrative penalties against plaintiffs, initiating investigations or revocation proceedings against plaintiffs, ordering the disconnection of plaintiffs' electrical service and recording notices of pending enforcement actions. *Id.* ¶¶ 38-39, 63-66, 68-72, 78-83, 90-93, 105-06. Plaintiffs outline the timing of their alleged protected activity and allege that each enforcement action directly followed the protected activity and was "in response to [this protected] activity . . . with the desire to stop Plaintiffs from seeking redress of their grievances, including criticism of the County and its employees." *Id.* ¶ 145; *see also id.* ¶ 76 ("The actions by the County and its employees in December 2014, including . . . the termination of the public electric service to the Property came after Plaintiffs had exercised their right to criticize the County and its employees . . . and was motivated by Plaintiffs' criticism."); *id.* ¶ 82 ("Rasmussen, Washko, Ivie, Williams, Moss, Powells and Eastman denied Plaintiffs' request for electrical service reconnection . . . in an effort to chill Plaintiffs' currently pending petitions. Defendants routinely grant electric service upon request and the Electrical Reconnection would have been granted to similarly situated people.").

These allegations, if true, plausibly show retaliation attributable to the County employees who were personally involved in the enforcement actions taken with respect to plaintiffs' property. The court is unpersuaded by the County defendants' blanket arguments that plaintiffs allege no facts "that would tend to exclude the possibility" that the County employees were "simply and lawfully enforcing County ordinances," and no facts that are "[in]consistent with the enforcement of building and zoning codes[.]" County Mot. at 15, 20. At the pleading stage, plaintiffs need not exclude the possibility that the enforcement actions were legitimate; they need only allege retaliation as a "plausible" conclusion. *In re Century Aluminum Co*., 729 F.3d at 1108. Plaintiffs have done so here as to all but two individual County defendants: Plaintiffs' retaliation claim falls short as to the Clerk of the County Board of Supervisors Cyndi Lee, and Lee's assistant Florence Evans. Only one allegation pertains to Lee and Evans. They are named in the suit solely because they "participated" with other named defendants in denying plaintiffs' appeal of a "determination of land use laws" applicable to plaintiffs' property. SAC ¶ 91; County Opp'n at 7. Simply alleging the County Clerk and her assistant helped to deny an appeal, without any allegations showing either of them spoke directly to Lull or knew about plaintiffs' allegedly protected activity, is not enough to plausibly show Evans and Lee denied the appeal in retaliation for plaintiffs' protected activity. *See In re Century Aluminum Co*., 729 F.3d at 1108 (claim can survive if "plausible" not merely "possible."). In sum, the retaliation claim survives as to all individual County defendants except for Lee and Evans.

### b) County as a Municipal Entity

Given that plaintiffs' retaliation claim against several individual County defendants survives dismissal, the County as a municipal entity may also potentially be liable for the alleged retaliation based on one of the theories outlined in *Monell v. Dep't of Social Servs*., 436 U.S. 658, 694 (1978). There are three avenues through which plaintiffs here may establish *Monell* liability for the alleged retaliation plaintiffs faced: (1) A County employee committed the retaliatory acts pursuant to a formal government policy or a longstanding practice or custom of the local government entity; (2) the individual who committed the alleged retaliation was an official with final policy-making authority; or (3) an official with final policy-making authority

directly ratified a subordinate's retaliatory conduct. *Gillette v. Delmore*, 979 F.2d 1342, 1346-47 (9th Cir.1992) (listing elements generally) (citations omitted).

The County defendants have not persuaded the court that plaintiffs' *Monell* claim should be dismissed due to failure to rely on the first and second avenues. The County's argument that the retaliation claim against it cannot survive because plaintiffs cannot prove an unconstitutional policy or custom by citing only "a single incident" and "random acts or isolated events" is unavailing. County Mot. at 14. Although this case pertains to a single property, plaintiffs have cited years of allegedly retaliatory interactions, which combined constitute more than "isolated" or "sporadic" incidents. *See generally* SAC (alleging retaliatory interactions spanning from 2010 through 2015); *see also* Pls.' County Opp'n at 2 (listing allegedly retaliatory acts). This case is easily distinguishable from the seminal case on which defendants rely. *See* County Mot. at 14 (citing *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1444 (9th Cir. 1989), *overruled on other grounds by Bull v. City & Cty. of San Francisco*, 595 F.3d 964 (9th Cir. 2010)). First, *Thompson* is procedurally distinguishable from this case in that it adjudicated a summary judgment order, not a motion to dismiss. Second, the *Monell* claim before the *Thompson* court pertained to a single, unconstitutional five-day detention, *Thompson*, 885 F.2d at 1444; it did not, as here, pertain to five years of allegedly unconstitutional interactions. The County defendants have identified no authority indicating that years of alleged misconduct targeting a single property equates to an "isolated incident" and the court is aware of none. This *Monell* theory survives dismissal.

Plaintiffs also raise another basis for *Monell* liability. They allege defendants Lori Moss, Bob Ivie, Tammy Derby and Brian Washko, all of whom allegedly committed retaliatory acts, possess final policy-making authority such that their isolated actions could be emblematic of an official policy. *Id.* ¶¶ 5, 7, 9, 15. The County defendants neither rebut that these employees have final policy making authority, nor acknowledge this alternative basis through which the County may be deemed liable for its employees' acts. As such, defendants have not met their burden to dismiss plaintiffs' retaliation claim against the County under either of these two *Monell* theories.

The court GRANTS defendants' motion to dismiss plaintiffs' retaliation claim against Lee and Evans but DENIES defendants' motion to dismiss the claim as to all other defendants.

IV. CONCLUSION

This court DISMISSES plaintiffs' tort claims against all County defendants, without leave to amend, and DISMISSES plaintiffs' retaliation claim as pled against County defendants Lee and Evans, without leave to amend. The court DISMISSES plaintiffs' equal protection claim against SMUD, with leave to amend, and DISMISSES plaintiffs' unreasonable seizure claim against SMUD, without leave to amend, but DENIES SMUD's motion to dismiss plaintiffs' due process claim.

As a result, only two claims remains: A due process claim against SMUD and a retaliation claim against all remaining County defendants except for Lee and Evans. Should plaintiffs elect to amend their equal protection claim against SMUD, they must do so within fourteen days.

IT IS SO ORDERED.

This order resolves ECF Nos. 44, 47.

DATED: February 12, 2018.

_____
UNITED STATES DISTRICT JUDGE